# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CEDRIC N. PIERCE,                              )
                                              )
                    Plaintiff,                )
                                              )     Case No. 13 CV 6824
          v.                                  )
                                              )     Judge Joan B. Gottschall
J. RUIZ, Badge No. 5143, Chicago Police Officer,  )
S. WHITEHEAD, Badge No. 12097, Chicago        )
Police Officer.                               )
                                              )
                    Defendants.               )

## MEMORANDUM OPINION & ORDER

Plaintiff Cedric Pierce brings claims under 42 U.S.C. § 1983 against two Chicago police officers, Officer J. Ruiz and Officer S. Whitehead, claiming that the Defendants used excessive force during their arrest of Pierce on September 19, 2011, and that they were deliberately indifferent to Pierce's medical needs following his arrest and subsequent booking at the 11th District Police Station in Chicago, Illinois. Before the court are the parties' motions *in limine*.

## I.      LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The court has broad discretion to rule on evidentiary questions raised in motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Nevertheless, a court should grant a motion *in limine* excluding evidence only when the movant shows that the evidence "is inadmissible on all potential grounds." *CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Assocs.*, 411 B.R.

591, 597 (N.D. Ill. 2009) (citing *Townsend v. Benya*, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003), and *Robenhorst v. Dematic Corp*., No. 05 C 3192, 2008 WL 1821519, at *3 (N.D. Ill. Apr. 22, 2008)). "'[E]videntiary rulings should [ordinarily] be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *Id.* (quoting *Hawthorne Partners v. AT&T Techs., Inc*., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). Rulings on motions *in limine* are preliminary; "the district court may adjust a motion *in limine* during the course of a trial." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006) (citing *Luce*, 469 U.S. at 41-42); *Luce*, 469 U.S. at 41-42 ("[A] ruling [*in limine*] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). Accordingly, the parties may renew their objections at trial as appropriate.

## II.     ANALYSIS

### A.     Plaintiff's Motion *in Limine* to Exclude Evidence Regarding Pre- and Post-Arrest Conduct

Pierce moves to bar any evidence or discussion regarding his conduct before and after his arrest on September 19, 2011. Pierce argues that the verbiage of his arrest report, which the Defendants completed, contains irrelevant and prejudicial evidence that the Defendants may attempt to use at trial to portray Pierce in a negative light. The arrest report indicates that at the time of Pierce's arrest, Pierce was patronizing prostitutes by "curbing" his car next to a group of known prostitutes, and that after his arrest, he was irate, profane, and aggressive while being driven to the police station and while in the interview room of the police station. Pierce argues that the court should exclude this evidence as irrelevant under Federal Rules of Evidence 401

and 402, unduly prejudicial under Federal Rule of Evidence 403, and speculative under Federal Rule of Evidence 602. The Defendants counter that Pierce's pre-arrest conduct is admissible under Rules 401 and 403 because it is relevant to support their contention that Pierce "acted aggressively and uncooperatively during his arrest." (Dkt. # 103, at 2). The Defendants also maintain that the conduct is admissible under Rule 608 because it is probative of Pierce's credibility or character for truthfulness or untruthfulness. They point out that Pierce admitted at his deposition that he was sitting in his car when the police first approached him, that he had a large quantity of cash in his pocket at the time, and that he had booked a nearby hotel room for four hours for purposes of having intimate relations with a woman (although Pierce stated that he was intending to be with a female friend named Liz, and not, as the Defendants contend, with a prostitute). As for Pierce's post-arrest behavior, the Defendants maintain that this conduct meets both Rule 401 and Rule 403's requirements for relevance and admissibility as it is necessary for understanding what occurred between the parties that night and "explains how much force the officers could legitimately use" on Pierce. (*Id*. at 6).

The court finds that evidence concerning what the Defendants believed Pierce was doing when they first observed him "curbing" his car—namely, soliciting prostitutes—is unduly prejudicial and speculative and therefore will be excluded. The Defendants' alleged initial observations were of Pierce parking his car. At that point in time, Pierce was alone. He was not actually arrested in the act of solicitation, nor did he have anyone in the car with him. Accordingly, the court agrees that the relevance of testimony regarding what Pierce "might have been" doing immediately prior to his arrest is outweighed by the speculative nature of the testimony and the likelihood that jurors will view Pierce in a negative light. That being said,

evidence that the Defendants noted Pierce to be intoxicated in the moments before his arrest certainly aids in explaining the facts and circumstances the Defendants faced immediately before and during the arrest. *See Graham v. Connor,* 490 U.S. 386, 396-97 (1989) (in excessive force cases, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation"). Evidence that Pierce was intoxicated makes it more likely that he acted in the way the Defendants say he did. *See Saladino v. Winkler,* 609 F.2d 1211, 1214 (7th Cir. 1979).

The court also finds admissible the evidence related to Pierce's post-arrest conduct while he was handcuffed and riding in the back of the officers' SUV, with Officer Ruiz at the wheel. This behavior occurred in the immediate aftermath of Pierce's arrest and thus can be construed as part of a continuing interaction between Pierce and the Defendants. Again, this conduct constitutes evidence that is relevant to whether the Defendants' actions were reasonable under the circumstances presented, and its probative value outweighs the danger of any unfair prejudice. However, the court excludes evidence pertaining to Pierce's behavior while being held in the interview room of the police station. This conduct is sufficiently far removed from the events surrounding his arrest as to be of dubious relevance. Pierce stated that after he was booked at the station, he was handed off to different officers and did not see Officer Ruiz again. Officer Whitehead was not involved in the transportation of Pierce to the police station, but had remained behind at the scene of the arrest to search Pierce's car and then transport it to the police station. Accordingly, Pierce's conduct at the police station while he was attended to by different police officers is not relevant to his excessive force and denial of medical attention claims.

In sum, Plaintiff's first motion *in limine* is granted in part and denied in part.  Evidence of pre- and post-arrest behavior is limited to the Defendants' observance of Pierce "curbing" his car; the Defendants' observations as to Pierce's demeanor, physical appearance, and behavior when they approached Pierce in his car; the parties' interactions immediately prior to Pierce's arrest (*i.e.*, the Defendants asking Pierce to produce his license and registration and Pierce rolling up the window, etc.); and Pierce's and Officer Ruiz's interaction during the drive to the police station, up to the point Officer Ruiz handed Pierce off to other, non-defendant officers.

> **B.      Plaintiff's Motion *in Limine* to Bar the Use of the Terms "Resisted Arrest" or "Resisted Police Officers"**

In his next motion *in limine*, Pierce seeks to preclude the Defendants from using the terms "resisted arrest" or "resisted police officers" because he was never convicted of the misdemeanor crime of resisting arrest and use of the terms would convey otherwise to the jury. The Defendants have agreed to stipulate that they will not allege Pierce was convicted of this misdemeanor in connection with the events underlying this case but otherwise maintain that the terms "resisted arrest" or "resisted police officers" are common to policing and are necessary to describe the encounter.  The court agrees with the Defendants.  Merriam-Webster's Dictionary defines the word "resist" to mean "to fight against (something); to try to stop or prevent (something)."  Merriam–Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/resist (last visited Oct. 5, 2016).  This is a commonly used English word. The court cannot be charged with monitoring each time the Defendants use a form of the word "to resist" to determine the context of the usage.  To the extent Pierce believes the word "resist" in certain contexts might lead to jury confusion as to whether he was ever charged with the

misdemeanor crime of resisting arrest, the court notes that Pierce may clarify during trial that he was never so charged.  The motion *in limine* is denied.

C.      **Plaintiff's Motion *in Limine* to Exclude and Limit the Use of Evidence of his Past Criminal Convictions**

Pierce's next motion *in limine* seeks to exclude evidence of his January 2012 misdemeanor convictions for driving on a suspended license and driving under the influence of alcohol ("DUI"), as well as earlier felony convictions for aggravated sexual abuse (approximately nine years ago) and for a violation of Illinois' sex offender registry (approximately three years ago).  Pierce argues that the 2012 convictions were for Class A misdemeanors that carried a sentence of less than one year, and did not involve a dishonest act or false statement as an element, and therefore are improper impeachment evidence.  As for the felony sexual abuse and sex offender violations, Pierce argues that evidence pertaining to these convictions would be unduly prejudicial and cause the jury to find him an unsympathetic plaintiff.  The Defendants argue that Pierce's felony convictions are admissible under Federal Rule of Evidence 609, and that the misdemeanor convictions are admissible as relevant foundation to Pierce's claim of excessive force.

Rule 609(a)(1) allows the admission of evidence of felony convictions punishable by death or imprisonment in excess of one year or that involved dishonesty or false statement regardless of the punishment.  However, this rule is tempered by Rule 403, which permits a court to exclude such evidence where the probative value is substantially outweighed by the danger of unfair prejudice. Added to the mix is the Seventh Circuit's limitations regarding the use of evidence of past felony convictions.  In *Campbell v. Greer,* 831 F.2d 700 (7th Cir. 1987), the

court explained that while a felony conviction may be used to impeach a witness in a civil action, opposing counsel may not:

> harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case. He may not. Essentially all the information the cross-examiner is permitted to elicit is the crime charged, the date, and the disposition. *Id.* at 707. *See also Gora v. Costa,* 971 F.2d 1325, 1330 (7th Cir. 1992) (noting that "all that is needed to serve the purpose of challenging the witness's veracity is the elicitation of the crime charged, the date, and the disposition").

831 F.2d at 707.

The court finds that Pierce's two felony convictions fall within the ambit of Rule 609(a)(1)(A), but that admission of specific information pertaining to the nature of Pierce's nine year-old aggravated sexual assault conviction and associated three year-old conviction for violating the sex offender registry is sufficiently inflammatory as to cause unfair prejudice to Pierce that substantially outweighs any probative value the conviction offers. *U.S. v. Neely,* 980 F.2d 1074, 1081 (7th Cir. 1992) (citing *United States v. Robinson,* 956 F.2d 1388, 1397 (7th Cir. 1992)). That being said, concerns of prejudice to Pierce can be mitigated by "sanitizing" the evidence of the two felony convictions. *Schmude v. Tricam Indus., Inc*, 556 F.3d 624, 627 (7th Cir. 2009). Accordingly, the Defendants may introduce evidence stating that Pierce was convicted of two felonies and provide the dates of those convictions. The Defendants may not reveal the nature of the crimes underlying the convictions. Pierce's motion *in limine* as to the felony convictions is denied except as provided regarding the sanitization parameters.

As for the misdemeanor violations arising out of the night in question, these convictions (DUI and driving on a suspended license) do not fall within the scope of Rule 609(a), and for this reason Pierce argues that these convictions are inadmissible. The Defendants argue that the

convictions—which stem from the events underlying this lawsuit— are relevant to their defense against Pierce's excessive force claim because they demonstrate that Pierce was in fact intoxicated on the night in question.  The Defendants also argue that Pierce should be barred under *Heck v. Humphrey*, 512 U.S. 477, 486-97 (1994), from arguing against his sworn admissions.

The use of state criminal convictions in subsequent § 1983 actions has been addressed by the Seventh Circuit in *Calusinski v. Kruger*, 24 F.3d 931, 933-34 (7th Cir. 1994) (finding that "evidence of a prior criminal conviction is admissible in a civil proceeding as *prima facie* evidence of the facts upon which the conviction is based if those facts are relevant to some issue involved in the civil proceeding" and where the criminal proceedings are of "'sufficiently serious import' to ensure the reliability of the conviction") (quoting *Thornton v. Paul*, 384 N.E.2d 335, 342 (Ill. 1987)); *see also Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 738 (N.D. Ill. 2004). We agree with the Defendants that evidence of Pierce's misdemeanor convictions, particularly his DUI conviction, are relevant to whether the Defendants used excessive or reasonable force in their arrest of Pierce because of the fact that Pierce was intoxicated during his interaction with the Defendants.  Pierce pleaded guilty to these misdemeanor violations during criminal proceedings that were certainly of sufficiently serious import to ensure their reliability.  Pierce's motion *in limine* as to the misdemeanor violations is denied.

### D.      Defendants' Motion *in Limine* No. 1

For their first motion *in limine,* the Defendants seek to bar evidence regarding a general "code of silence," "blue wall," or any claim of a cover up.  The Defendants argue that Pierce has not pointed to sufficient evidence showing that there is such a code as relates to Officers Ruiz

and Whitehead, and that unsubstantiated and generalized allegations of a larger "code of silence" would be highly prejudicial and of weak probative value. Pierce maintains that such evidence is admissible because there is a strong inference that a "code of silence" exists within the Chicago Police Department, and he should not be barred from raising the inference that the Defendants and other police officer witnesses are biased and motivated to protect each other.

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel,* 469 U.S. 45, 52 (1984). Indeed, "[a] party's and a witness's common group membership is probative of bias...." *Townsend v. Benya,* 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). The court agrees with the Defendants that generalized allegations, separate and apart from what may be true of the officers named as defendants here, are not helpful and are akin to impermissible propensity evidence. *Maldonado v. Stinar,* No. 08 C 1954, 2010 WL 3075680, at *4 (N. D. Ill., Aug. 5, 2010) (allowing evidence of bias among the particular officers involved in the incident at issue there, while excluding generalized evidence of a "code of silence" or "blue wall") (citing *Christmas v. City of Chi.,* 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (same), and *Moore v. City of Chi.,* No. 02 C 5130, 2008 WL 4549137, at *6 (N.D. Ill. Apr. 15, 2008) (same)).

With this case law in mind, the court grants the Defendants' motion *in limine* in part and denies it in part finds as follows: (1) Pierce may not use the term "blue wall" as this term is unduly prejudicial; (2) Pierce may not introduce evidence that law enforcement officers generally or typically adhere to a "code of silence" or seek to cover up misconduct in order to protect fellow officers; (3) Pierce may present evidence specific to Officers Ruiz and Whitehead

demonstrating bias and an attempt to cover up the allegedly wrongful nature of Pierce's arrest and/or their denial of medical attention following the arrest; and (4) Pierce may question the Defendants to attempt to demonstrate that the officers' synchronized narrative of the events of September 19, 2011 stemmed from an expectation among officers patrolling together to present a unified front and to protect each other.

### E.    Defendants' Motion *in Limine* No. 2

In their second motion *in limine*, the Defendants seek to bar any evidence, testimony, argument, or inference regarding unrelated allegations of police misconduct in the media pursuant to Federal Rules of Evidence 401, 402 and 403.  The Defendants argue that any evidence of this nature is of little probative value and would only encourage the jury to punish the officers in this case for the highly publicized misconduct of other Chicago police officers. The Defendants also note that the City of Chicago is not a defendant in this case, and therefore opinions about whether the City has deficient policies and practices are immaterial to whether Officers Ruiz and Whitehead used excessive force against Pierce and were deliberately indifferent to his medical needs.  Pierce maintains that he does not intend to reference any recently publicized incidents of misconduct involving other Chicago police officers; however, he may wish to address this matter should it arise during trial, and may wish to raise this topic with prospective jurors to uncover potential bias.  The Defendants do not object to Pierce raising unrelated incidents of police misconduct during jury *voir dire*.

Generally, "evidence of police conduct unrelated to the [defendants] in this case has only minimal probative value and is highly inflammatory and prejudicial."  *Fox-Martin v. Cnty. of*

*Cook*, No. 09 C 1690, 2010 WL 4136174, at *4 (N.D. Ill. Oct. 18, 2010).  Speculation that there may be instances in which such evidence might be admissible is insufficient to withstand a motion *in limine* seeking to limit evidence of publicized instances of police misconduct. *Redmond v. City of Chi.*, No. 06 C 3611, 2008 WL 539164, at *6 (N.D. Ill. Feb. 26, 2008) (barring references to unrelated police misconduct when the plaintiff failed to provide any reason why he might attempt to introduce this evidence).  The Defendants' second motion *in limine* is granted in part and denied in part as follows:  (a) Pierce may raise the topic of unrelated police misconduct with prospective jurors during *voir dire*; but (b) Pierce may not introduce evidence at trial of these unrelated yet highly publicized incidents.  If Pierce wishes to ask the court to revisit this ruling at trial, he must raise the issue outside the presence of the jury.

### F.      Defendants' Motion *in Limine* No. 3

For their third motion *in limine*, the Defendants seek to exclude argument or innuendo that the jury should "send a message" to the City of Chicago or "punish" the City by means of its verdict.  The Defendants argue that this kind of argument is based on punitive damages, which cannot be assessed against a municipality on a § 1983 claim.  *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983.").  Pierce argues that even though the City of Chicago is not a party to this suit and cannot be made to pay damages of any kind, he is seeking compensatory and punitive damages from the Defendants for alleged misconduct that occurred while they were employed as Chicago police officers, and therefore he should be allowed to "remind[ ] jurors that one purpose of any damages award will be to send a message to others."  (Dkt. 109, Pierce Resp. at 2).  The Defendants reply that allowing Pierce to make this argument is grossly inappropriate

as Pierce has not even presented an argument for municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

"The standard judicial formulation of the purpose of punitive damages is that it is to punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct." *Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996). By arguing that he would like to "remind" jurors to "send a message" to "others," such as other Chicago police officers and the City of Chicago as their employer, Pierce is essentially saying that he would like to deter the City of Chicago from future misconduct. However, the City is immune from punitive damages. *See* 745 ILCS 10/2–102. *Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1033 (N.D. Ill. 2011). The court grants the Defendants' motion *in limine* No. 2 insofar as Pierce is barred from any argument that the jury should "send a message" to the City of Chicago, thereby implying that the City can be held liable for punitive damages. However, the motion is denied insofar as Pierce will be permitted to argue that he seeks, through his lawsuit, to deter the Defendants (and other Chicago police officers) from future misconduct.[1]

**G. Defendants' Motion *in Limine* No. 4**

Next, the Defendants seek to bar testimony from any lay witnesses as to who was "at fault" for "this incident." The Defendants maintain that lay witness may testify only as to what they observed on the night of September 19, 2011, but may not opine as to those facts. Fed. R. Evid. 701. In response, Pierce argues that this undefined, blanket exclusion would unfairly

---

[1] At the pretrial conference in this case, defense counsel should be prepared to inform the court of how they intend to avoid a conflict of interest between their obligation to the City to limit compensatory damages without concern for punitive damages, and their obligation to the individual defendants to limit punitive damages without concern for compensatory damages. In the court's view, a jury instruction informing the jury of the City's obligation to pay compensatory damages but not to pay punitive damages might be a way of approaching the problem.

prejudice him and would prevent him from stating his opinion that the defendant officers were at fault. We agree with Pierce that this motion *in limine* is premature and overbroad. The court will reserve its ruling on this motion and will rule on this matter should it arise at trial.

### H.     Defendants' Motion *in Limine* No. 5

The Defendants' fifth motion *in limine* seeks to bar Pierce from testifying as to negative encounters with other police officers on the basis that the Defendants cannot be held responsible for the actions of others and such testimony could prejudice the jury. Pierce maintains that his prior run-ins with police help explain his state of mind on the night in question. The court finds that the prejudicial effect of such evidence outweighs the probative value. The likelihood that such testimony will confuse and mislead the jury is greater than any relevance this testimony might have. *Gowder v. Bucki*, 13 C 1834, 2013 WL 6182964, at *4 (N.D. Ill., Nov. 26, 2013). The motion *in limine* is granted.

### I.     Defendants' Motion *in Limine* No. 6

In their sixth motion *in limine*, the Defendants seeks to bar any testimony from Pierce regarding how other non-defendant police officers were laughing at him while he was leaving the police station on the morning of September 19, 2011. The Defendants argue that under Federal Rules of Evidence 401, 403, and 602, the evidence should be excluded as irrelevant to the allegations against them, prejudicial in that it seeks to prejudice the jury as to police officers in general, and speculative because Pierce cannot be certain why the officers were laughing. Pierce agrees that the actions of other police officers on the morning after his arrest are not attributable to Officers Ruiz and Whitehead, but contends that this exchange bears on whether the Defendants acted with deliberate indifference to Pierce's medical needs. The court finds that

Pierce may testify as to what happened to him on the day in question, including what happened after he left the police station and was transported by ambulance to the hospital. However, the court fails to see how the probative value of whether or not other police officers were laughing at Pierce outweighs the prejudice to the Defendants or outweighs the risk of jury confusion. The Defendants were not with Pierce at the time of the alleged laughing incident. In fact, as discussed earlier, Officer Whitehead's interaction with Pierce ended at the time of Pierce's arrest, and Officer Ruiz's interaction with Pierce ended when he handed Pierce to the booking personnel. Pierce's release from the police station occurred at about 8:00 a.m., which is some number of hours after his arrest and transportation to the police station. Defendants' Motion *in Limine* No. 6 is granted.

**J.     Defendants' Motion *in Limine* No. 7**

The Defendants' next motion *in limine* seeks to bar undisclosed opinions by two non-retained medical experts, Dr. Colin Brown and Ms. Wanissa Ford. The Defendants state that the Rule 26(a)(2)(C) disclosures for these two witnesses failed to indicate that either will be testifying as to the cause of Pierce's injuries and, therefore, both should be barred from testifying on this topic. *See* Fed. R. Civ. Proc. 26(a)(2)(C). In response, Pierce states that he disclosed these two witnesses in his Rule 26(a)(2)(C) disclosures and indicated that they may be called upon to provide non-retained expert testimony as to the condition of his shoulder, limitations he suffers as a consequence of his injury, and other observations and opinions they formed during the course of his treatment. Pierce also states that he does not intend to call either of these witnesses "to testify as to the impact of the event of September 19, 2011 on the underlying cause of Mr. Pierce's injury." The Defendants reply that since neither of these witnesses treated Pierce

at Stroger Hospital or otherwise witnessed the events underlying this suit, their testimony will cause jury confusion that is unfairly prejudicial to the Defendants. The Defendants further argue that as medical treaters, Pierce was obligated to provide expert reports in accordance with Rule 26(a)(2)(B).

The parties have not provided the court with clear information pertaining to the extent of Pierce's Rule 26(a)(2)(C) disclosures. The court cannot ascertain even whether Dr. Brown and Ms. Ford were medical treaters. The parties need to supplement their presentations on this issue at least one week before trial.

### K.       Defendants' Motion *in Limine* No. 8

Next, the Defendants seek to bar Pierce from offering evidence or testimony regarding future lost earnings in the amount of $30,900. The Defendants contend that any evidence on this topic would be purely speculative as Pierce admitted at his deposition that he has no way to prove lost income at the rate of $150 per day, as applied to 195 days of lost work and, further, that expert testimony is required to draw inferences regarding Pierce's future medical condition. Defendant points out that Pierce admitted at his deposition that he has no paperwork or any other way of proving where he worked and for how much. In response, Pierce argues that he is planning on proving future lost earnings through testimony at trial. Pierce notes that at his deposition, he testified that he worked for a man named Willie Smith, and that he and Smith could establish by means of testimonial evidence a foundation for Pierce's future lost earnings claim. Pierce also refutes that expert testimony is necessary to establish the claim.

Section 1983 "create[s] a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them." The basic purpose of a § 1983 damage award

is to compensate a plaintiff for injuries caused by the deprivation of constitutional rights. *Carey v. Piphus,* 435 U.S. 247, 254 (7th Cir. 1978). The rules governing compensation for such injuries "should be tailored to the interests protected by the particular right in question." *Id.* at 259. "Legal relief may take the form of nominal, compensatory, and punitive damages." *Henning v. Nicklow*, No. 1:08-CV-180, 2009 WL 3642739, at *4 (N.D. Ill., Oct. 30, 2009) (citing Federal Judicial Center, *Section 1983 Litigation* 190 (2d ed. 2008)). Accordingly, presumed damages are not available; actual damages must be proved. *Carey,* 435 U.S. at 264. Under Illinois law, damages may not be awarded on the basis of mere conjecture or speculation; a plaintiff must prove that there is a reasonable certainty that the anticipated harm or condition will actually result in order to recover monetary compensation. *See Wehmeier v. UNR Indus., Inc.*, 572 N.E.2d 320, 339 (Ill. Ct. App. 1991); *see also Doe v. United States*, 976 F.2d 1071, 1085 (7th Cir. 1992) (indicating that future damages must be proved to a degree of reasonable certainty).

The Seventh Circuit Pattern Jury Instructions for compensatory damages in § 1983 cases provides in relevant part:

> Plaintiff must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. This does not mean, however, that compensatory damages are restricted to actual loss of money; they include both the physical and mental aspects of injury, even if they are not easy to measure.

Federal Civil Jury Instruction of the Seventh Circuit § 7.23 (2005).

In this case, Pierce has been unable to produce a single piece of documentary evidence in support of his work history. He does not have a single pay stub, tax return, invoice, or other

evidence capable of providing reasonable certainty. That being said, the court denies the Defendants' motion *in limine* No. 8 and finds that Pierce may seek to establish at trial the extent of his lost future earnings, if any, through testimonial evidence. A jury instruction relating to compensatory damages will mitigate the Defendants' concern regarding the speculative nature of the evidence.

### L. Defendants' Motion *in Limine* No. 9

For their ninth motion *in limine*, the Defendants seek to bar Pierce and any witness he calls from testifying about future medical costs based on Pierce's failure to disclose these costs pursuant to Rule 26(a)(2). The Defendants maintain that a projection of future medical costs requires expert testimony, yet Pierce has failed to disclose an expert with specialized knowledge on this topic. The Defendants point out that although Pierce disclosed Dr. David Fetter as an expert, Dr. Fetter did not review sufficient facts or data to allow him to draw conclusions regarding Pierce's future medical costs. In response, Pierce asserts that expert testimony is not necessary, and the jury may reasonably base an award for future medical costs on lay testimony and inferences drawn from Pierce's injury. Pierce does not contend that he has disclosed an expert to speak on this matter.

Federal Rule of Evidence 701 provides that a lay witness may offer opinion testimony only to the extent that it is "(a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Pierce may naturally testify about his own perceptions, including the physical and emotional effects of the Defendants' alleged conduct. However, neither Pierce nor any of the witnesses he calls may

offer medical opinions that require scientific, technical, or other specialized knowledge. *Christmas,* 691 F. Supp. 2d at 821. With those parameters in place, the court reserves ruling on this matter until such time as it becomes an issue at trial. Should the need arise, the court will address at trial the admissibility of evidence pertaining to future medical costs upon the motion or objection of either party.

### M. Defendants' Motion *in Limine* No. 10

For this motion *in limine*, the Defendants argue that *Heck v. Humphrey,* 512 U.S. 477 (1994), and the doctrine of collateral estoppel preclude Pierce from presenting any evidence, testimony, or argument that suggests the invalidity of Pierce's guilty plea to driving under the influence of alcohol and driving on a suspended license. Specifically, the Defendants ask the court to bar nine assertions on grounds that Pierce's stipulations of fact at the state court plea hearing prohibit him from controverting any of the following statements:

1. That Pierce did not commit the offense of driving while intoxicated;

2. That Pierce did not commit the offense of driving with a suspended license; and

3. That Pierce was not under the influence of alcohol while interacting with the police officers on the date of his arrest.

Given statement No. 3, the Defendants also maintain that Pierce should be barred from testifying or arguing contrary to any of the following associated facts:

a. That Officers Ruiz and Whitehead observed Pierce "curbing" his vehicle at 4553 W. Washington Street;

b. That the Defendants conducted a field interview of Pierce and observed he had a strong odor of alcohol coming from his mouth, that he had red, blood-shot, glossy eyes, that his speech was slurred and mumbled, and that he became irate and resisted being handcuffed;

c.      That Pierce did not produce a driver's license and proof of insurance but instead kept asking the Defendants why he need to do so and refused to produce them;

d.      That the Defendants found out Pierce's license had been revoked;

e.      That after being asked to exit the car, Pierce, on three separate occasions smiled, rolled up the window and ultimately had to be assisted out of the car; and

f.      That Pierce refused all field sobriety and breathalyzer tests and then fell asleep.

Pierce admits that *Heck* prevents him from "directly attacking his convictions and arguing that such convictions are invalid," (Dkt. # 116 at 2), but argues that the Defendant's motion is too broad. Accordingly, Pierce admits that *Heck* bars statements 1 and 2, but not statement 3 and its associated statements (a)-(f), arguing that as long as he provides a factual narrative that is consistent with driving under the influence of alcohol and on a suspended license, *Heck* is satisfied. As for collateral estoppel, Pierce argues that the doctrine does not apply because three of the four required elements of this doctrine are not satisfied.

In *Heck,* the Supreme Court held that a § 1983 plaintiff can "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," only if he can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. In other words, "arguments attacking the validity of a conviction cannot be advanced under § 1983 unless the conviction or sentence previously has been invalidated." *Polzin v. Gage*, 636 F.3d 834, 836 (7th Cir. 2011) (per curiam). In determining whether *Heck* requires the dismissal of an argument or claim, the court must consider whether the factual basis of the claim necessarily implies the

invalidity of the plaintiff's conviction. *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014); *see also VanGuilder v. Baker,* 435 F.3d 689, 692 (7th Cir. 2006) (where plaintiff in § 1983 case did not collaterally attack his conviction for resisting a law enforcement officer but argued only that he suffered unnecessary injuries as a consequence of excessive force, "[e]xactly what happened during the blow-by-blow in the St. Elizabeth's emergency room, and thus whether VanGilder is entitled to damages, is a question to be decided at trial").

In this case, Pierce admits that he was driving while intoxicated and on a suspended license. Accordingly, *Heck* applies to statements 1 and 2. As for statement 3, the court finds that *Heck* applies to this statement as well. Allowing Pierce to argue to the jury that he was not intoxicated at the time of his interaction with the Defendants is akin to telling the jury that the Defendants did not have a proper basis for arresting him for driving under the influence of alcohol, which is an argument clearly at odds with his guilty plea. *Green v. Delatorre*, No. 99 C 6452, 2004 WL 783353, at *3 (N.D. Ill. Jan. 22, 2004). Pierce cannot legitimately argue that he was intoxicated when officers observed him operating his vehicle ("curbing" or otherwise) but not intoxicated when they approached him just minutes later (or less) given the temporal proximity between these events.

The court turns now to statements (a) through (f). The court finds that statement (a) is not barred by *Heck*, but with a caveat. Pierce may testify that he was doing something other than "curbing" his vehicle at the time he first was observed by the Defendants because such testimony does not necessarily collaterally attack his underlying convictions. It is possible for Pierce to allege that he was merely driving through the neighborhood, or that he was warming his body by running the car's engine, without invalidating his state court convictions. However, Pierce is

precluded from arguing either that he was not driving or that he was not in actual physical control of his car. A conviction for driving under the influence of alcohol requires that Pierce exerted some sort of physical control over his car. *See* 625 Ill. Comp. Stat. 5/11–501(a) (providing that "[a] person shall not drive or be in actual physical control of any vehicle within this State while … under the influence of alcohol"). Any testimony at odds with this basic premise is not admissible.

Similarly, statement (b) is barred by *Heck*, but in part only. Facts relating to Pierce's intoxicated state—slurred speech, a strong odor of alcohol—are intrinsic to his conviction for driving under the influence of alcohol and thus cannot be attacked without implying the invalidity of the conviction. However, whether Pierce was irate and resisted being handcuffed are matters that go to the heart of Pierce's suit and may be litigated without transgressing *Heck*. *See Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008) ("Public officials who use force reasonably necessary to subdue an aggressor are not liable on the merits; but *whether* the force was reasonable is a question that may be litigated without transgressing *Heck* or *Edwards) (citing VanGilder,* 435 F.3d at 692) (emphasis in original).

Statements (c), (e) and (f) do not contradict the DUI and driving on a suspended license convictions. Each of these statements involves factual details regarding the interaction between the parties that Pierce can dispute at trial without running afoul of *Heck.*

Finally, the court finds that statement (d) is barred by *Heck*. Pierce cannot contest the Defendants' discovery that his license had been revoked without implying the invalidity of his conviction for driving on a suspended license.

In sum, the court finds that statements 1, 2, 3 and (d) are barred by *Heck*. Statements (a) and (b) are partially barred by *Heck*, as explained above. Statements (c), (e), and (f) are not at odds with *Heck*.

Because *Heck* does not operate as a complete bar to each of the statements proffered by Defendants in this motion *in limine*, the court turns to the secondary question of whether the doctrine of collateral estoppel otherwise functions to bar the surviving portions of statements (a) and (b) and all of statements (c), (e), and (f). The court finds that it does not.

"In Illinois, a litigant is estopped from raising an issue in a collateral proceeding when the following four factors are met: '(1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issue was necessary to the court's judgments, and (4) those issues are identical to issues raised in the subsequent suit.'" *Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013) (citations omitted); *Johnson v. Reiter*, No. 14 C 1522, 2015 WL 6674531, at *6 (N.D. Ill. Oct. 30, 2015). Neither party in this case contests the first factor, but they disagree whether the other three factors have been satisfied. The court need not look to each of these three factors, however, because it is clear that factor three has not been satisfied. For stipulated facts at the plea hearing to have preclusive effect in these § 1983 proceedings, "it is absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined....If there is any uncertainty on the point that more than one distinct issue of fact is presented to the court the estoppel will not be

applied, for the reason that the court may have decided upon one of the other issues of fact."
*Kessinger v. Grefco, Inc.*, 672 N.E.2d 1149, 1156 (Ill. 1996) (quotation marks and citations omitted).

Applying these standards to the facts of this case, the court finds that statements (c), (e), and (f), as well as those portions of statements (a) and (b) not barred by *Heck*, were not necessary to the state court convictions against Pierce. At the state court hearing, Pierce stipulated to a number of facts, including that the Defendants observed Pierce "curbing" his vehicle, discovered that Pierce's license had been revoked, and observed that Pierce smelled of alcohol, had blood shot eyes, and was mumbling. These facts—as limited by the court's clarification above that Pierce may argue he was not "curbing" his vehicle provided he refrains from arguing facts suggesting that he was not in control of his vehicle (within the meaning of 625 Ill. Comp. Stat. 5/11–501(a))—were sufficient to sustain the guilty plea of DUI and driving on a suspended license. Whether or not Pierce "curbed" his vehicle or instead performed some other action with his car demonstrating control of the vehicle; whether or not Pierce was emotionally volatile; whether or not Pierce refused to hand over documentation and instead rolled up his window; whether or not Pierce refused to exit his car; and whether or not Pierce refused field sobriety tests and breathalyzer tests are all questions to be determined at trial. None of these facts was necessary and essential to the state court convictions for DUI and driving on a suspended license. Accordingly, collateral estoppel does not bar Pierce's discussion of these facts at trial.[2]

---

[2] In *Wells*, the Seventh Circuit also examined how Illinois courts—apart from an express invocation of a preclusive doctrine—treat facts that underlie a guilty plea in a subsequent proceeding. Upon surveying the existing Illinois case law, the court determined that "Illinois law does not have a consistent, general practice—aside from the traditional doctrines of preclusion—that is applicable to these circumstances." *Wells,* 707 F.3d at 763; *see also Country Mut. Ins. Co. v. Duncan,* 794 F.2d 1211, 1215 (7th Cir. 1986) ("A guilty plea, like any other admission, is not necessarily conclusive as to the facts underlying the plea

Finally, the Defendants request the provision of a *Gilbert* instruction to the jury in the event Pierce does not abide by *Heck* and the court's rulings in these motions *in limine*. *See Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008). The court reserves its ruling on this matter until such time as the issue presents itself. However, in the event Pierce disputes his state court convictions or their essential factual underpinnings during trial, the court will consider implementing *Heck* "'through instructions to the jury at the start of trial, as necessary during the evidence, and at the close of the evidence'" informing the jury that the essential facts underlying Pierce's DUI and driving on a suspended license convictions may not be contested. *Hemphill v. Hopkins*, Nos. 08 C 157, 08 C 902, 2011 WL 6155967, at * 4 (N.D. Ill., Dec. 12, 2011) (quoting *Gilbert,* 512 F.3d at 902)). At such time as this issue arises, the Defendants shall raise it with the court outside the presence of the jury.

In sum, the Defendants' motion *in limine* No. 10 is granted in part and denied in part as set forth above.

## N.    Defendants' Motion *in Limine* No. 11

The Defendants' eleventh motion *in limine* seeks to bar Pierce from offering evidence of any kind regarding prior disciplinary records or civilian complaints of either of the Defendants or other non-defendant police personnel involved in this incident. The Defendants maintain that any such evidence is "propensity" evidence and should be barred as irrelevant and unduly prejudicial under Federal Rules of Evidence 402 and 403. Pierce asserts that the Defendants' motion fails to identify any specific evidence and is therefore overbroad, and further that under

---

but is subject to explanation by the declarant."); *Barnes v. Croston,* 247 N.E.2d 1, 3 (Ill. 1969) ("[A] guilty plea is admissible in a subsequent civil action against defendant ... subject to explanation and contradictions and may be received, weighed, and considered by the jury in connection with all of the other evidence in the case.").

Rule 404(b)(2), evidence of past conduct may be admissible for other purposes than to show propensity, including motive, opportunity, and intent. *See Strong v. Clark*, No. 89 C 1483, 1990 WL 70421, at *3 (N.D. Ill., May 4, 1990).

The Defendants do not state with any specificity which complaints, lawsuits, or disciplinary histories they are seeking to bar. Indeed, they did not concretely identify a single past event, or the officer to whom it is relevant. For that reason, the court denies the motion as overbroad and premature. The court finds that the admissibility of any particular complaint register or any disciplinary record depends, among other things, on the nature of the prior act, when it occurred, and whether it shares any similarity to the events of this case. *See, e.g., Okai v. Verfuth,* 275 F.3d 606, 610 (7th Cir. 2001). In the absence of more specific information, the court will not bar an entire category of evidence at this juncture. *Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *26 (N.D. Ill. June 12, 2015). The parties are free to raise this matter at a later point by motion or during the trial outside the hearing of the jury. This motion *in limine* is denied.

### III.    CONCLUSION

The parties' motions *in limine* are granted or denied, in whole or in part, consistent with this Memorandum Opinion and Order.


Date: October 11, 2016                                    _____/s/_____

                                                          Joan B. Gottschall
                                                          United States District Judge